2017 ND 152

**IN the INTEREST OF Danny Robert NELSON**

**Lonnie Olson, State's Attorney, Petitioner and Appellee**

**v.**

**Danny Robert Nelson, Respondent and Appellant**

**No. 20160113**

Supreme Court of North Dakota.

Filed 6/29/2017

Kari M. Agotness (on brief), Ramsey County State's Attorney, Devils Lake, ND, for petitioner and appellee.

David D. Dusek (on brief), Grand Forks, ND, for respondent and appellant.

Kapsner, Justice.

[¶ 1] Danny Nelson appeals from a district court order civilly committing him as a sexually dangerous individual. He argues the State failed to prove by clear and

convincing evidence that he is a sexually dangerous individual. We conclude the district court's findings are insufficient to demonstrate Nelson is likely to engage in further acts of sexually predatory conduct or that he has serious difficulty controlling his behavior. We reverse the district court's order of commitment and direct Nelson be released from civil commitment.

I

[¶ 2] Our prior decision in *Interest of Nelson*, 2017 ND 28, 889 N.W.2d 879, sets forth the relevant facts of this case. The district court entered an order on March 8, 2016 finding Nelson was a sexually dangerous individual and ordering Nelson committed to the State Hospital. Nelson filed a notice of appeal on March 28, 2016. On appeal, we concluded the district court's findings were inadequate to permit appellate review with regard to whether Nelson was likely to engage in further acts of sexually predatory conduct and whether Nelson presently has serious difficulty controlling his behavior. *Id.* at ¶ 14. We retained jurisdiction under N.D.R.App.P. 35(a)(3) and remanded with instructions that the district court make specific findings on whether Nelson is likely to engage in further acts of sexually predatory conduct and whether Nelson has a present serious difficulty controlling behavior. *Id.*

II

[¶ 3] "We review civil commitments of sexually dangerous individuals under a modified clearly erroneous standard of review." *Matter of Midgett*, 2009 ND 106, ¶ 5, 766 N.W.2d 717. "We will affirm the district court's decision unless the court's order is induced by an erroneous view of the law, or we are firmly convinced the order is not supported by clear and convincing evidence." *Matter of A.M.*, 2010 ND 163, ¶ 14, 787 N.W.2d 752 (citations and quotations omitted). This Court gives "great deference to the court's credibility determinations of expert witnesses and the weight to be given their testimony." *Matter of Wolff*, 2011 ND 76, ¶ 5, 796 N.W.2d 644.

[¶ 4] Under Chapter 25–03.3 of the North Dakota Century Code, the State has the burden of proving a person is a sexually dangerous individual by clear and convincing evidence. A person may not be committed as a "sexually dangerous individual" unless the State proves the following statutory elements provided in N.D.C.C. § 25–03.3–01(8):

> (1) the individual has engaged in sexually predatory conduct, (2) the individual has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction, and (3) the individual's condition makes them likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others.

*Interest of Johnson*, 2016 ND 29, ¶ 3, 876 N.W.2d 25 (citations omitted). This Court has recognized substantive due process requires additional proof beyond the three statutory elements:

> In addition to the three statutory requirements, to satisfy substantive due process, the State must also prove the committed individual has serious difficulty controlling his behavior. . . .

> We construe the definition of a sexually dangerous individual to mean that proof of a nexus between the requisite disorder and dangerousness encompasses proof that the disorder involves

serious difficulty in controlling behavior and suffices to distinguish a dangerous sexual offender whose disorder subjects him to civil commitment from the dangerous but typical recidivist in the ordinary criminal case.

*Wolff*, 2011 ND 76, ¶ 7, 796 N.W.2d 644 (citations omitted). The United States Supreme Court has explained civil commitment requires a connection between the disorder and the individual's inability to control his or her actions:

"[I]nability to control behavior" will not be demonstrable with mathematical precision. It is enough to say that there must be proof of serious difficulty in controlling behavior. And this, when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.

*Kansas v. Crane*, 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). This Court has also recognized the conduct demonstrating an individual's serious difficulty in controlling behavior need not be sexual in nature. *Wolff*, at ¶ 7.

## III

[¶ 5] "The district court must find the State has proven all of these elements by clear and convincing evidence." *Johnson*, 2016 ND 29, ¶ 4, 876 N.W.2d 25 (citing *Midgett*, 2009 ND 106, ¶ 6, 766 N.W.2d 717). "The district court must state the specific factual findings upon which its legal conclusions are based." *Id.* (citing *Matter of R.A.S.*, 2008

ND 185, ¶ 8, 756 N.W.2d 771). "The [district] court errs, as a matter of law, when its findings are insufficient or do not support its legal conclusions." *Id.*

[¶ 6] We previously concluded the district court found the State had proven the first two statutory elements: past sexually predatory conduct and a congenital or acquired condition manifested by a sexual disorder, a personality disorder, or other mental disorder. *Nelson*, 2017 ND 28, ¶ 9, 889 N.W.2d 879. These findings were supported by the record. *Id.* However, we concluded the district court failed to make adequate findings for appellate review on the remaining statutory element and the constitutionally required finding of whether the individual has serious difficulty controlling behavior. Instructing the district court on remand, we emphasized the need for specific findings of fact on "whether Nelson has a present serious difficulty controlling behavior." *Id.* at ¶ 14.

[¶ 7] The district court's supplemental findings of fact state:

Mr. Nelson's diagnosis of Unspecified Paraphilic Disorder has predisposed him to engaging in sexual contact with prepubescent and pubescent females, as well as unlawfully entering the homes of women whom he was sexually attracted to for the purpose of stealing various items, mainly ladies undergarments, for sexual gratification. The diagnosis of Unspecified Paraphilic Disorder alone makes him likely to engage in sexually predatory conduct.

Mr. Nelson's Alcohol Use Disorder further aggravates the possibility of future sexually predatory conduct.

Dr. Krance has opined; Mr. Nelson's personality disorder has manifested in some extreme ways, including his past

sexually predatory conduct. It is concluded that a nexus exists linking the [Other] Specified Personality Disorder, Antisocial and Narcissistic Features to Mr. Nelson's sexual offending in that his pattern of sexually predatory conduct is characterized by opportunistic offending, impulsivity, deceitfulness, aggression and a lack of remorse for his victims. It is widely accepted that the best predictor of future behavior is past behavior. Moreover, this disorder predisposes him to act impulsively and to disregard the wishes, rights, and safety of others in order to achieve his own ends. Therefore, this disorder in combination with his history of sexual offending predisposes him to engage in future acts of sexually predatory conduct.

As mentioned in *Nelson*, the unlawful entry conduct cited by the district court occurred roughly twenty-three years before the commitment hearing, in 1992. 2017 ND 28, ¶ 13, 889 N.W.2d 879. This conduct is far too remote in time to the commitment hearing to have any impact on the consideration of whether Nelson is likely to engage in sexually predatory conduct in the future. The district court stated, Nelson's "diagnosis of Unspecified Paraphilic Disorder alone makes him likely to engage in sexually predatory conduct." The presence of a mental disorder or condition alone does not constitute clear and convincing evidence an individual is likely to engage in further acts of sexually predatory conduct. The description of the characteristics of such mental disorder also does not alone constitute "proof of serious difficulty in controlling behavior." *Crane*, 534 U.S. at 413, 122 S.Ct. 867. The district court's orders note no examples of "impulsivity, deceitfulness, aggression," or other concerning behavior, outside of Nelson's criminal convictions from 2009 and 1992. Past instances of behavior may have predictive value in determining how an individual may act in the future. However, instances of conduct occurring over twenty years before a commitment hearing add little to a determination of that individual's present likelihood of engaging in further acts of sexually predatory conduct.

[¶ 8] The district court's supplemental findings on whether Nelson has serious difficulty controlling behavior were:

It was further stated that Mr. Nelson will have difficulty modulating his behavior based on his mental condition. Dr. Riedel's report and testimony were not persuasive in that it relied in the Court's view too heavily on what family and a former spouse would do in assisting Mr. Nelson in the community.

This Court defers to a district court's determination an individual has serious difficulty controlling behavior when the determination is supported by specific findings demonstrating the difficulty. In *Matter of Hanenberg*, we upheld a finding of serious difficulty controlling behavior when the individual engaged in grooming behavior with a female therapist who led the individual's sex offender treatment in prison and engaged in inappropriate hugging and touching of a female volunteer who came to the prison. 2010 ND 8, ¶¶ 14–17, 777 N.W.2d 62. In *Matter of Vantreece*, we upheld a finding of serious difficulty when the individual admitted he had uncontrolled anger and rage, had to be moved to his own jail cell because of his compulsive masturbation, and engaged in sexually predatory conduct after being released from chemical dependency treatment close in time to the commitment hearing. 2009 ND 152, ¶ 17, 771 N.W.2d 585. We have also recognized an analysis of an individu-

al's past criminal history, alone, is insufficient because the issue is whether the individual remains a sexually dangerous individual. *Interest of Johnson*, 2015 ND 71, ¶ 9, 861 N.W.2d 484; *see also Interest of Graham*, 2013 ND 171, ¶ 14, 837 N.W.2d 382 (determination of whether individual has serious difficulty controlling his behavior focuses on the present or future and inquires as to whether he may change with passage of time and adherence to treatment).

[¶ 9] The district court's orders do not support a conclusion Nelson is a sexually dangerous individual subject to civil commitment. "In sexually dangerous individual cases, an individual may only be committed when, among other things, the individual has serious difficulty controlling his or her behavior making that individual a danger to others." *Johnson*, 2016 ND 29, ¶ 11, 876 N.W.2d 25. The district court was unable to identify any recent conduct or describe anything that shows Nelson has a present serious difficulty controlling his behavior. Further, the error is not simply a failure to identify the evidence existing in the record. The orders themselves are not supported by competent record evidence that shows Nelson meets the statutory and constitutional requirements for civil commitment. The district court relied heavily on Dr. Krance's report. Dr. Krance's report relies heavily on Nelson's long-term history, with little about his recent past. The record was devoid of recent examples of behavior similar to those identified in prior cases in which this Court upheld findings of serious difficulty controlling behavior. As noted in the previous opinion, Nelson also completed sex offender treatment programming while incarcerated. Specifically, Nelson successfully completed a low-intensity sex offender treatment program in 2010 and a high-intensity sex offender

treatment program in 2014. *Nelson*, 2017 ND 28, ¶ 2, 889 N.W.2d 879. The State has not provided any evidence showing that Nelson had difficulty controlling his behavior during incarceration. The burden is on the State to provide evidence meeting the criteria for commitment. *Johnson*, 2016 ND 29, at ¶ 3, 876 N.W.2d 25. We conclude the district court's order of commitment and supplemental findings do not support its legal conclusions as a matter of law. We do not address other arguments raised because they either are unnecessary to the decision or are without merit.

## IV

[¶ 10] We conclude the district court's findings are insufficient to demonstrate Nelson is likely to engage in further acts of sexually predatory conduct or that Nelson has serious difficulty controlling his behavior. We therefore reverse the district court's order of commitment and direct Nelson be released from civil commitment.

[¶ 11] Carol Ronning Kapsner

Lisa Fair McEvers

Daniel J. Crothers

[¶ 12] The Honorable Jerod E. Tufte was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge Dale V. Sandstrom, sitting.

Sandstrom, Surrogate Judge, dissenting.

[¶ 13] The majority orders the release of a sex offender with a high risk of reoffending. I respectfully dissent. The district court made the necessary findings supported by the evidence in the record, and should be affirmed.

[¶ 14] The record reflects Nelson's twenty-year history of sexual and sexual-related offenses. Dr. Jennifer Krance reported:

Mr. Nelson's history of sexually related offenses dates back to at least the early 1990's (i.e., more than 20 years). Over that period of time, Mr. Nelson was convicted on four counts of Theft of Property for entering the residences of females to steal various items, mainly ladies undergarments, for sexual gratification. He entered some of these residences on more than one occasion. At the time he entered these residences, he was on supervised probation from a conviction for Aggravated Assault. He was convicted of Continuous Sexual Abuse of a Child in 2009 for sexually abusing [a child] when she was between the ages of nine and 15. Regarding this conviction, Mr. Nelson stated, "Something was put in front of me and I didn't say no." The average male (i.e., non-paraphilic) does not have a problem refusing sexual contact with a 13 or 14–year–old female, even if the contact was actually just "put in front of" the individual, as Mr. Nelson claimed. During the time the sexual abuse was occurring, Mr. Nelson faced several other legal convictions, often alcohol related driving offenses. There are no indications from the available documentation that Mr. Nelson sexually acted out in an offensive manner while incarcerated with the DOCR. However, sexual acting out behavior is not a necessary requirement to conclude that he will experience serious difficulty controlling his behavior if released to the community. In addition to his high Static–99R and PCL–R scores, the fact that he committed sexual related offenses while on probation, in spite of the potential consequences, demonstrates that Mr. Nelson does have serious difficulty controlling his behavior, and that this difficulty differentiates him from the "dangerous but typical recidivist convicted in an ordinary criminal case" (Kansas v. Crane, 534 U.S. 407, 122 S.Ct. 867).

[¶ 15] For this evaluation, Dr. Krance administered the Static–99R, now "the gold standard in the field for sex offender risk assessment." The Static–99R shows that Nelson's current score places him at high risk to sexually reoffend.

[¶ 16] Dr. Krance further reported that current STABLE–2007 "results indicate that Mr. Nelson poses a high risk of sexually offensive behavior over the short term."

[¶ 17] Dr. Krance also identified Nelson's currently held belief that he has no risk of reoffending as itself creating a heightened risk.

Mr. Nelson sees himself as posing no risk for further acts of sexually predatory conduct if released to the community. Seeing oneself as very low or no risk is accepted in the field as a dynamic risk factor for reoffense, in that it suggests a lack of insight and awareness of the risk one poses as well as the factors that lead to reoffense, and thus some lack of ability or willingness to avoid high-risk situations. This is further apparent with his historical inability to maintain sobriety from alcohol and cannabis, despite involvement with chemical dependency treatment in the past, numerous legal consequences, and negatively impacting his relationships with others.

[¶ 18] This proceeding is governed by N.D.C.C. ch. 25–03.3 providing for the civil commitment of sexually dangerous individuals.

"Sexually dangerous individual" means an individual who is shown to have engaged in sexually predatory conduct and who has a congenital or acquired condi-

tion that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction that makes that individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others. It is a rebuttable presumption that sexually predatory conduct creates a danger to the physical or mental health or safety of the victim of the conduct....

N.D.C.C. § 25–03.3–01(8). In *Matter of G.R.H.*, 2006 ND 56, 711 N.W.2d 587, the constitutionality of our statute was challenged under *Kansas v. Crane*, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). We carefully analyzed our statutory language and held:

> Consistent with the language in our statute and to avoid any possible constitutional infirmity, we construe the definition of a sexually dangerous individual to mean that proof of a nexus between the requisite disorder and dangerousness encompasses proof that the disorder involves serious difficulty in controlling behavior and suffices to distinguish a dangerous sexual offender whose dis-

order subjects him to civil commitment from the dangerous but typical recidivist in the ordinary criminal case. We conclude that nexus between the requisite disorder and future dangerousness satisfies the due process requirements of *Crane*.

*G.R.H.*, at ¶ 18.

[¶ 19] The district court made the necessary findings, and they are supported by the record. The majority ignores facts in the record and impermissibly substitutes its judgment for that of the trial court.

[¶ 20] Dale V. Sandstrom, S.J.

Gerald W. VandeWalle, C.J.